NO. 12-01-00337-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




MARQUETH WILSON,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


TEXAS WORKERS' 

COMPENSATION COMMISSION,
§
 SMITH COUNTY, TEXAS

APPELLEE





MEMORANDUM OPINION


 Marqueth Wilson ("Wilson") brings this pro se interlocutory appeal challenging an order
granting a plea to the jurisdiction filed by the Texas Workers' Compensation Commission
("TWCC"). Wilson raises five issues on appeal. We affirm.


Background


 Wilson sustained a work-related injury on June 18, 1991. Temporary income benefits were
paid by his employer's workers' compensation carrier, Liberty Mutual Insurance Company ("Liberty
Mutual"), until August 1991 when Wilson was sentenced to eight years of imprisonment. After his
release on March 21, 1993, Wilson sought treatment for his injury and again began receiving
temporary income benefits from Liberty Mutual. He received benefits until June 1993. At or about
the time Wilson's benefits ceased, Liberty Mutual assigned Wilson an impairment rating of five
percent. Based upon the assigned rating, Liberty Mutual paid impairment income benefits for fifteen
weeks until October 1993. (1) Although Wilson's benefits terminated, his doctor did not release him
to return to work. In March 1994, Wilson's doctor assigned Wilson a five percent impairment rating. 
Wilson disputed his doctor's conclusion, and TWCC designated a doctor to review the rating. Upon
completing the review, the designated doctor agreed with Wilson's doctor.

 On May 23, 1994, Wilson was arrested for another offense for which he was ultimately
convicted and sentenced to thirty years of imprisonment. While in prison, Wilson informed TWCC
that he disagreed with the impairment rating assigned by the designated doctor. In February 2000,
Wilson requested that TWCC schedule a benefit review conference (BRC) and submitted an original
petition along with medical records and a "retrospective report" of every check issued by Liberty
Mutual. TWCC informed Wilson that a BRC would not be scheduled because there were no
unresolved disputes between Wilson and Liberty Mutual. According to Wilson, he was informed
by TWCC that 


 [d]ispute resolution proceedings held at [TWCC] are to resolve disputes between the parties associated
to your claim and are not the correct forum to establish that your statutory rights were violated. If you
have specific concerns related to a party who has violated a specific section of the Act and rules, these
specific concerns should be forwarded to our Compliance and Practices Division for review. 


Wilson submitted a letter to the Appeals Panel in an attempt to appeal the denial of a BRC, but
received no response. (2) He also wrote the director of the Compliance and Practices Division in 2000
and 2001, requesting that "administrative violations proceedings be enacted against TWCC
employees and Liberty Mutual", but received no response.

 On July 24, 2001, Wilson sued TWCC for money damages in the amount of the additional
benefits he contends he is entitled to receive from Liberty Mutual. In his petition, he asserted that
TWCC and its employees failed to handle his workers' compensation claim according to the law and
procedures set forth in the Texas Workers' Compensation Act (the "Act"). He also described certain
acts and omissions of TWCC employees he contends were wrongful such as (1) the ombudsman's
failure to adequately inform him of his statutory rights and assist him in protecting his benefits as
required by section 409.041(b) of the Texas Labor Code (3); (2) the failure of TWCC's employees to
adequately answer his questions concerning who provides benefits to someone who is no longer
entitled to benefits but is unable to work; (3) TWCC's failure to timely notify his treating physician
in accordance with section 408.123 (4) that an impairment rating should be assessed; (4) TWCC's
failure to act in good faith to determine whether any extended unemployment or underemployment
existed as a direct result of his impairment as required by section 408.086(a); and (5) the failure of
TWCC's employees to schedule a BRC.

 On September 24, 2001, Wilson amended his original petition to join various TWCC
employees as defendants in their official and individual capacities. Wilson also included additional
allegations of misconduct, stating that TWCC and its employees (1) discriminated against him in
violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution; (2)
denied his right to procedural due process; and (3) acted negligently in the performance of ministerial
acts. Wilson also alleged that he had exhausted all available administrative remedies and therefore
his suit is authorized by the Texas Administrative Procedure Act. Furthermore, he included
additional complaints about specific conduct of TWCC's employees including (1) the issuance of
conflicting correspondence; (2) the failure to respond to all of his correspondence; and (3) the failure
to fully investigate his claim.

 In response to Wilson's allegations, TWCC filed an Answer and Plea to the Jurisdiction
asserting that it is a state agency created by the Texas Legislature and is entitled to the same
sovereign immunity from suit and from liability as the State of Texas. TWCC also asserted the
defense of official immunity on behalf of its officers, agents, and employees and alleged that Wilson
had not exhausted his administrative remedies. TWCC's plea to the jurisdiction was granted on
December 17, 2001, and this appeal followed.




Standard of Review


 A plea to the jurisdiction contests the authority of a trial court to determine the subject matter
of the case. Texas Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). The plaintiff bears
the burden of alleging facts affirmatively demonstrating jurisdiction. See Texas Ass'n of Bus. v.
Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). In determining whether jurisdiction
exists, the trial court must construe the pleadings liberally in favor of jurisdiction unless the face of
the pleading shows a lack of jurisdiction, Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804 (Tex.
1989), and must take all pleaded factual allegations as true and look to the pleader's intent. County
of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). The trial court may also consider evidence
relevant to the jurisdictional issue raised and must do so when necessary to resolve the issue. Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 546, 555 (Tex. 2000). However, in so doing, the trial court
must not weigh the merits of the case. Brown, 80 S.W.3d at 555-56.

 If the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction
may be granted without allowing the plaintiff an opportunity to amend. Id. at 555. However, the
mere failure of a petition to state a cause of action does not show a want of jurisdiction in the trial
court. Bybee v. Fireman's Fund Ins., 160 Tex. 429, 331 S.W.2d 910, 917 (1960). When a plaintiff
fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate
incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be
afforded the opportunity to amend. See id. We review a trial court's ruling on a plea to the
jurisdiction de novo because subject matter jurisdiction is a question of law. See Mayhew v. Town
of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).



Issues Presented


 Wilson contends that the trial court erred in granting TWCC's plea to the jurisdiction. In five
issues, he argues that (1) TWCC and its employees are not protected by sovereign immunity, official
immunity, or qualified immunity; (2) the Administrative Procedure Act authorizes his suit; (3)
TWCC's employees discriminated against him based upon his race and his class as a prisoner or ex-felon, thereby violating 42 U.S.C. § 1983, the Fourteenth Amendment of the United States
Constitution, and Articles I, III, and XIX of the Texas Constitution; (4) the acts of TWCC's
employees were ministerial and carried out negligently and with malice; and (5) he exhausted all of
his available administrative remedies as set forth in the Act. We interpret Wilson's third issue as
an argument that sovereign immunity, official immunity, and qualified immunity do not protect
TWCC and its employees from suit or liability for his constitutional claims.

 The employee defendants did not join in TWCC's plea to the jurisdiction, and the trial court's
order does not dismiss Wilson's claims against them. Therefore, the trial court's order dismisses
Wilson's claims against TWCC and against the employee defendants in their official capacities. See
Pickell v. Brooks, 846 S.W.2d 421, 424-25 (Tex. App.-Austin 1992, writ denied) (a suit against
state officials in their official capacities is equivalent to a suit against the State). 

 Wilson's third and fourth issues, as well as certain arguments in his first issue, relate to
official immunity and qualified immunity. Because Wilson's claims against the employee
defendants in their individual capacities are still pending in the trial court, we do not address those
issues and arguments.


Sovereign Immunity


 Sovereign immunity derives from the principle that the sovereign may not be sued in its
courts without its consent. Texas Workers' Comp. Comm'n v. Garcia, 862 S.W.2d 61, 72 (Tex.
App.-San Antonio 1993), rev'd on other grounds, 893 S.W.2d 504 (Tex. 1995). Unless waived,
sovereign immunity protects the State from lawsuits for damages. Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). Sovereign immunity encompasses two
principles: immunity from suit and immunity from liability. Texas Natural Res. Conservation
Comm'n v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002). Immunity from suit bars a suit against the
State unless immunity is waived by constitutional provision or legislative enactment. Wichita Falls
State Hosp. v. Taylor, 106 S.W.3d 692, 695 (Tex. 2003). Absent consent, the State retains immunity
from suit even if its liability is undisputed. Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 409
(Tex. 1997).

 A suit against a state agency is considered to be a suit against the State. Lowe v. Texas Tech.
Univ., 540 S.W.2d 297, 298 (Tex. 1976). Similarly, a suit against state officials in their official
capacities is equivalent to a suit against the State. Pickell, 846 S.W.2d at 425. Consequently,
sovereign immunity protects agencies that are derived from the state constitution and laws as well
as state officials sued in their official capacities. Lowe, 540 S.W.2d at 298; see Pickell, 902 S.W.2d
at 425. It is undisputed that TWCC is a state agency.

 As a general rule, a plaintiff who sues the State under state law must establish legislative
consent to the suit. Jones, 8 S.W.3d at 638. Otherwise, sovereign immunity from suit defeats a trial
court's subject matter jurisdiction. Id. at 638. A party can establish consent by referencing a statute
or a legislative resolution clearly and unambiguously granting consent. Id.; University of Texas
Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994). 

Tort Claims

 To establish that the trial court has jurisdiction of a tort claim against the State, a plaintiff
must (1) allege consent to suit either by reference to a statute or express legislative permission, see
Jones, 8 S.W.3d at 638, and (2) plead facts that fall within the scope of the waiver relied on. Texas
Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 1999). To demonstrate the requisite
consent, Wilson contends that the Texas Tort Claims Act ("TTCA") provides an exception to the
general rule that the State is immune from suit. See Tex. Civ. Prac. & Rem. Code Ann.
§§ 101.001-101.109 (Vernon 1997 & Supp. 2003). He further argues that the TTCA imposes
liability on the State for the torts of its employees under the principle of respondeat superior. 
However, the waiver of immunity contained in the TTCA is limited to narrowly-defined
circumstances. See Miller, 51 S.W.3d at 587. 

 The TTCA allows a suit against the State or a governmental unit for property damage,
personal injury, or death proximately caused by the negligence of an employee that arises from the
use or operation of a motor-driven vehicle or motor-driven equipment or a condition or use of
tangible personal or real property. Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997).
Wilson has not pleaded facts within the scope of this limited waiver. See Miller, 51 S.W.3d at 587. 
Therefore, he has not shown that sovereign immunity from suit for his tort claims has been waived. 

Constitutional Claims

 Relying on 42 U.S.C. § 1983, Wilson seeks damages for TWCC's alleged violations of
certain rights guaranteed to him by the United States Constitution. Section 1983 provides a remedy
when any "person" acting under color of state law deprives another of rights, privileges, or
immunities protected by the United States Constitution or laws. 42 U.S.C.A. § 1983 (West Pamph.
Supp. 2003). 

 Unlike a claim asserted pursuant to state law, consent to suit is not required for a section
1983 action. See Nueces County v. Hoff, 105 S.W.3d 208, 210 (Tex. App.-Corpus Christi 2003,
pet. filed); Morris v. Collins, 916 S.W.2d 527, 531 (Tex. App.-Houston [1st Dist.] 1995, no writ)
(O'Connor, J. concurring). However, neither a state nor its officials acting in their official capacities
are "persons" under section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109
S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); Harrison v. Texas Dep't of Criminal
Justice--Institutional Div., 915 S.W.2d 882, 889 (Tex. App.-Houston [1st Dist.] 1995, no writ). 
Congress intended for municipalities and other local government units to be considered "persons"
under section 1983 and therefore subject to suit. See Monell v. Dep't of Soc. Servs. of New York,
436 U.S. 658, 689, 98 S.Ct. 2018, 2035, 56 L.Ed. 611 (1978). It did not intend, by enacting section
1983, to create a cause of action against states to be brought in state courts. See Will, 491 U.S. at
66, 109 S.Ct. at 2310. 

 Allegations of state constitutional violations do not abrogate the State's immunity from suit, 
 Morris, 916 S.W.2d at 531, and Wilson has not alleged consent. Suits seeking money damages for
alleged violations of the Texas Constitution are prohibited even if equitable relief is available. See
City of Beaumont v. Bouillion, 896 S.W.2d 143, 149 (Tex. 1995) (unlike suits for damages, suits
for equitable relief for constitutional violations are not prohibited). In other words, Texas recognizes
neither an implied private right of action nor a common law cause of action for damages resulting
from a violation of the Texas Constitution. Id. at 147. Consequently, Wilson has failed to plead a
legally cognizable claim for the constitutional violations he alleges.

 Based upon our review of Wilson's pleadings and our application of the appropriate standard
of review, we conclude that Wilson has failed to plead a cause of action against TWCC for which
sovereign immunity has been waived. We further conclude that the defects in Wilson's pleadings
cannot be cured by amendment. Accordingly, we overrule his first and third issues insofar as they
relate to sovereign immunity.



Right to Judicial Review


 In his second and fifth issues, Wilson argues that the trial court has jurisdiction to review his
impairment rating and determine whether he is entitled to additional benefits even though his
complaint was not resolved through the process prescribed by the Act. In his second issue, he
contends that procedural due process and the Administrative Procedure Act (5) ("APA") create an
inherent right to judicial review of TWCC decisions. In his fifth issue, he argues that he has
exhausted all of the administrative remedies available to him and therefore the APA authorizes
judicial review of TWCC's actions.

Administrative Procedure Act

 Section 2001.171 of the APA provides that "[a] person who has exhausted all administrative
remedies available within a state agency and who is aggrieved by a final decision in a contested case
is entitled to judicial review...." Tex. Gov't Code Ann. § 2001.171 (Vernon 2000). Wilson argues
that this right is in addition to the right of judicial review provided in the Act and is available to him
because TWCC prevented him from exhausting his administrative remedies. We disagree.

 Although the language of section 2001.171 is general, the legislature intended the judicial-review provisions of the APA to be procedural only. Southwest Airlines v. Texas High Speed Rail
Auth., 867 S.W.2d 154, 158 (Tex. App.-Austin 1993, writ denied). Therefore, section 2001.171
does not create a right of judicial review where the right does not exist by reason of another statute
specifically granting the right. Id. Moreover, even if section 2001.171 created an independent basis
for judicial review, Wilson has not exhausted his administrative remedies as required by the section.

 Wilson could proceed no further in the administrative process with his challenge to his
impairment rating because TWCC did not schedule a BRC. See Tex. Lab. Code Ann. § 410.024
(Vernon 1996) (parties to a disputed compensation claim are not entitled to a contested case hearing
or arbitration on the claim unless a BRC is conducted). However, the allegations in Wilson's
pleadings affirmatively show that Wilson's inability to exhaust the administrative remedies
prescribed by the Act resulted from his failure to provide the medical information necessary to
support his dispute. Therefore, Wilson did not exhaust his administrative remedies. See Yamaha
Motor Corp., U.S.A. v. Motor Vehicle Div., Texas Dep't of Transp., 860 S.W.2d 223, 229-30 (Tex.
App.-Austin 1993, writ denied) (party who does not comply with procedural requirements does not
preserve statutory right of judicial review). Wilson's fifth issue is overruled. 

Procedural Due Process

 Texas law recognizes no right to judicial review of an administrative order unless (1) a statute
provides the right, (2) the order adversely affects a vested property right, or (3) the order otherwise
violates some constitutional right. Gen. Servs. Comm'n, 39 S.W.3d at 599. Wilson contends that
he has an inherent right to review in this case because (1) TWCC failed to schedule a BRC, (2) he
was deprived of a vested property right, (3) the right of judicial review provided by the Act is
unavailable because he was not allowed to complete the administrative process prescribed by the
Act, and therefore (4) he has been denied procedural due process.

 Procedural due process requirements attach only to the deprivation of constitutionally-protected property and liberty interests. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct.
2701, 2705, 33 L.Ed.2d 548 (1972). Property rights are created and their dimensions defined by
existing rules or understandings stemming from independent sources such as state law. Id., 408 U.S.
at 577, 92 S.Ct. at 2709. An individual's property interest is protected if he has a "legitimate claim
of entitlement that is created, supported, or secured by rules or mutually explicit understandings." 
Alford v. City of Dallas, 738 S.W.2d 312, 316 (Tex. App.-Dallas 1987, no writ) (citations omitted)
(emphasis in original). In other words, a vested property right is "a title, legal or equitable, to the
present or future enjoyment of property, or to the present or future enforcement of a demand, or a
legal exemption from the demand of another." National Carloading Corp. v. Phoenix, 142 Tex.
141, 176 S.W.2d 564, 570 (1944).

 In his amended petition, Wilson does not specifically identify the vested property right of
which he contends he has been deprived. The allegations in his petition contradict any assertion that
he had a vested property right in a BRC or in additional workers' compensation benefits. Wilson's 
petition shows that his entitlement to a BRC was conditioned upon his furnishing certain
documentation to TWCC. Moreover, he admits that he would be entitled to additional benefits only
in the event his impairment rating is ultimately determined to be higher than five percent. 
Therefore, according to the above definition, Wilson has not shown that TWCC's actions or the 



actions of TWCC's employees in their official capacities affected a vested property right. 
Consequently, he cannot show that he was deprived of procedural due process. Moreover, as
previously explained, the APA does not create an independent right of judicial review in the instant
case. Accordingly, Wilson's second issue is overruled.


Conclusion


 The face of Wilson's amended petition affirmatively demonstrates an absence of jurisdiction
in the trial court. Therefore, the trial court was not required to afford Wilson an opportunity to
amend. Wilson also has not shown that he is entitled to judicial review of his complaints. 
Accordingly, we affirm the trial court's order granting TWCC's plea to the jurisdiction.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered November 13, 2003.

Panel consisted of Worthen, C.J. and DeVasto, J.

Griffith, J., not participating.

















(PUBLISH)
1. The fifteen-week period was computed at the rate of three weeks for each percentage point of impairment. 
See Tex. Lab. Code Ann. § 408.121(a)(1) (Vernon 1996).
2. A BRC is an informal proceeding aimed at resolving disputed issues by mutual agreement. Tex. Lab. Code
Ann. § 410.021 (Vernon 1996). If the dispute is not resolved, the parties then proceed to a contested case hearing, which
is a formal evidentiary proceeding with sworn testimony and prehearing discovery. Tex. Lab. Code Ann. §§ 410.151,
410.169 (Vernon 1996). Any party may appeal the contested case officer's decision to TWCC's Appeals Panel. Tex.
Lab. Code Ann. § 410.202 (Vernon 1996). 
3. All statutory references are to the Texas Labor Code unless otherwise indicated.
4. If an employee is not certified as having reached maximum medical improvement before the expiration of 102
weeks after the date income benefits begin to accrue, TWCC must notify the treating doctor of the certification
requirements. Tex. Lab. Code Ann. § 408.123(c) (Vernon 1996).
5. Tex. Gov't Code Ann. §§ 2001.001-.902 (Vernon 2000 & Supp. 2003).